# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4843 | **DATE** | 12/3/2003 |
| **CASE TITLE** | Hydra-Stop, Inc. et al vs. Severn Trent Environmental Services, Inc. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 2/3/2004 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Plaintiffs' motion (Doc 16-1) to disqualify counsel denied without prejudice. Their motion (Doc 17-1) to dismiss the counterclaims is denied, and the motion (Doc 19-1) to strike the affirmative defenses is granted in part and denied in part. Defendant Severn Trent's motion (Doc 11-1) to dismiss for lack of personal jurisdiction is denied. Defendant Severn Trent PLC's answer to the complaint, and plaintiffs' response to the counterclaim are due December 23, 2003. Discovery to proceed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 0 3 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 33 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | 03 DEC -3 AM 10:50 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HYDRA-STOP, INC., an Illinois corporation; )
HSI SERVICES, INC., an Illinois corporation; )
ASYLUM PARTNERS LLC, a Delaware )
corporation; and KEVIN P. MURPHY, )
)
      Plaintiffs, )
)
vs. )  03 C 4843
)
SEVERN TRENT ENVIRONMENTAL )
SERVICES, INC., a Texas corporation, as a )
corporate entity and as successor in interest to )
PITOMETER ASSOCIATES, INC., a New Jersey )
corporation; SEVERN TRENT PLC, a public )
company formed under the laws of the United )
Kingdom; and CAPITAL CONTROLS LIMITED, )
a private company limited by shares formed under )
the laws of the United Kingdom, )
)
      Defendants. )

**DOCKETED**
DEC 0 3 2003

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on four separate motions of the parties. Plaintiffs Hydra-Stop, Inc., HSI Services, Inc., Asylum Partners LLC, and Kevin Murphy move to disqualify the law firm of Morgan, Lewis & Bockius LLP ("Morgan Lewis") as counsel for Defendants Severn Trent Environmental Services, Inc., Capital

33

Controls Limited, and Severn Trent PLC as well as to dismiss counterclaims and to strike affirmative defenses filed by the Defendants. Defendant Severn Trent PLC moves for dismissal from this action, claiming that this court lacks personal jurisdiction over it. For the reasons set forth below, the motion to disqualify is denied; the motion to dismiss the counterclaims is denied; the motion to strike affirmative defenses is granted in part and denied in part, and the motion to dismiss for lack of personal jurisdiction is denied.

## BACKGROUND

The dispute in this case arises out of an Asset Purchase Agreement executed on May 31, 2000, between Hydra-Stop and Defendants Pitometer Associates, Inc. ("Pitometer") and Capital Controls Limited ("Capital").[1] Pursuant to the agreement, Capital purchased the assets of Hydra Stop, Ltd., and Pitometer purchased the assets of Hydra-Stop, Inc.; HSI Services, Inc.; HSI Trucking, Inc.; and HSI Network Sciences, Inc. for the grand total of $11,750,000. The purchase price included inventory estimated to be worth at $310,000 at the time the agreement was executed. The agreement acknowledged that the actual value of the inventory was not known as

---

[1] Defendant Severn Trent Environmental Services, Inc. is the successor in interest to Pitometer. Defendant Severn Trent PLC, the parent company of Severn Trent Environmental Services, is a holding company based in the United Kingdom. The parties dispute whether Severn Trent PLC is also the parent of Capital.

of the date of execution by inclusion of ¶ 2.9, which states that within five days of the execution of the agreement, the parties would conduct a physical count of all of the inventory included in the asset purchase. The paragraph further states that if the count revealed that the value of the inventory was more than $310,000, the purchase price would be increased to include the difference between the estimated and actual inventory values. When the actual value of the inventory was calculated, it was found to be worth $1,525,000, a difference of $1,215,000. The agreement also contained a provision regarding earnout payments not to exceed $5,000,000. According to Plaintiffs, the Defendants deliberately suppressed sales and prevented Plaintiffs from realizing their full due under the earnout provision.

Plaintiffs raised their concerns about these issues to Defendants before filing the instant suit. At that time, Defendants retained Morgan Lewis to conduct an investigation regarding the validity of Plaintiffs' claims. The investigation was spearheaded by Attorneys Jami McKeon and Troy Brown. In October 2002, those attorneys met with Murphy and others to inform them that, according to their investigation, Plaintiffs' claims were unfounded. Unconvinced that this conclusion was reliable, Plaintiffs filed suit in this court in July 2003, alleging breach of contract, fraud, conspiracy to commit fraud, and tortious interference with contractual relations by Severn Trent PLC.

Defendants, with the exception of Severn Trent PLC, answered the complaint and advanced affirmative defenses and four counterclaims (two sounding in contract, one for fraud, and one for conversion). Severn Trent PLC has moved for dismissal of the complaint as to it pursuant to Fed. R. Civ. Proc. 12(b)(2), arguing that this court cannot exercise personal jurisdiction over it.

Plaintiffs, for their part, have moved to disqualify the entire firm of Morgan Lewis, or alternatively Attorneys McKeon and Brown, from representing the Defendants in this case. They have also moved to dismiss the counterclaims pursuant to Fed. R. Civ. Proc. 12(b)(6) and to strike the affirmative defenses pursuant to Fed. R. Civ. Proc. 12(f). Because the outcome of the motion to disqualify counsel could moot the other motions, we address it and Plaintiffs' other two motions first.

## DISCUSSION

### I. Motion to Disqualify Counsel

Disqualification is a "drastic measure that courts should impose only when absolutely necessary." Owen v. Wangerin, 985 F.2d 312, 317 (7th Cir. 1993) (quoting Schiessle v. Stephens, 717 F.2d 417 (7th Cir. 1983)). The burden is on the moving party to show the facts warranting disqualification. Livers v. Wu, 6 F. Supp. 2d 921, 925 (N.D. Ill. 1998); Weeks v. Samsung Heavy Industries Co., 909 F. Supp. 582, 583 (N.D. Ill. 1996). Motions for disqualification "should be viewed with extreme caution

for they can be misused as techniques of harassment." Freeman v. Chicago Musican Instrument Co., 689 F.2d 715, 722 (7th Cir. 1982).

Here, Plaintiffs assert that disqualification is appropriate because the attorneys who conducted the prelitigation investigation were made unwitting accomplices to the earlier fraud allegedly perpetrated by the Defendants, and that the investigation served to continue that fraud. Consequently, they argue, the particulars of the investigation, the instructions the attorneys received (which Plaintiffs speculate were deliberately circumscribed to skew the results of the investigation), and the attorneys' knowledge of the October 2002 meeting all point to only one outcome: McKeon and Brown will be essential witnesses to the development of the Plaintiffs' fraud claims, and their testimony will be prejudicial to their clients as Plaintiffs are certain that their testimony will reveal the Defendants' duplicity.

None of the grounds advanced by Plaintiffs warrants dismissal at this time. We do not agree, based on Plaintiffs' presentation, that McKeon and Brown's testimony is necessary to establish Plaintiffs' fraud claim. As Defendants point out, Plaintiffs do not attest that the attorneys participated in the fraud, and the essential events underlying the claim of fraud had come to pass before the attorneys were even retained, let alone began their investigation. Moreover, Plaintiffs have offered nothing beyond their own suspicions that any testimony of the two attorneys would run counter to Defendants'

positions. Such speculation is insufficient to establish prejudice. See Bogosian v. Bd. of Educ. of Cmty. Unit Sch. Dist. 200, 95 F. Supp. 2d 874, 875 (N.D. Ill. 2000); Weeks v. Samsung Heavy Industries Co., 909 F. Supp. 582, 583 (N.D. Ill. 1996); see also Northern Trust Bank/Oakbrook v. Fahoum, 1987 WL 17485, at *2-3 (N.D. Ill. Sept. 23, 1987).

While we acknowledge Plaintiffs' legitimate concerns regarding waiver of their objections to the continued participation of Morgan Lewis and particularly of Attorneys McKeon and Brown if they waited to bring their motion, we cannot conclude that the situation justifies disqualification at this time. Accordingly, the motion to disqualify Attorneys McKeon and Brown is denied without prejudice. The motion to disqualify the firm of Morgan Lewis is denied as moot.

**II. Motion to Dismiss Counterclaims**

Rule 12(b)(6) evaluates the legal sufficiency of a plaintiff's complaint. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). A court, in ruling on a motion to dismiss a counterclaim, uses the same standards of review that apply to claims made in the main complaint. See Cozzi Iron & Metal Inc. v. U.S. Office Equipment, Inc., 250 F.3d 570, 574 (7th Cir. 2001). In ruling on a motion to dismiss, the court must accept all well-pleaded allegations as true and will not dismiss a case for failure to state a claim unless the plaintiff cannot prove any facts sufficient to

support his claim. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). All inferences shall be drawn in a light most favorable to the plaintiff. Jackson v. E.J. Branch Corp., 176 F.3d 971, 978 (7th Cir. 1999). To survive a motion to dismiss, a plaintiff must only provide a "short and plain statement" under Rule 8(a)(2); the particulars of her claim are not required. Midwest Gas Servs. v. Ind. Gas Co., 317 F.3d 703, 710 (7th Cir. 2002).

*A. Contract Claims*

Defendants allege two contract claims: one in Counterclaim I and one in Counterclaim IV. The first claim alleges that Plaintiffs breached their obligations under Section 3.1(e)(ii) of the Asset Purchase Agreement by failing to prepare their financial statements in accordance with generally accepted accounting principles ("GAAP") and failing to present fairly the information presented within the financial statements. Plaintiffs' main beef with this claim centers on the element of damages, specifically, that Defendants cannot claim that they were damaged by receiving inventory worth more than the $1.2 million they paid for it.

Defendants respond that the larger inventory value, rather than raising the overall value of the assets, in fact lowered the overall worth of the purchased companies, to the extent that they may have decided not to execute the deal at all had they been supplied with more accurate numbers. Admittedly, this argument sounds

more in fraudulent inducement than breach, and the most natural reading of the allegations of Count I would seem to indicate that Defendants got more than they paid for and were not damaged by the alleged breach. Moreover, it is somewhat of a strain to conclude that a failure to apply GAAP to a December 1999 financial statement would be the lynchpin for a purchase at the end of the following May, rather than intervening due diligence. However, a Rule 12(b)(6) motion focuses on whether any plausible factual scenario would be sufficient to support the alleged claim. Here, Defendants' arguments are not so farfetched that we are compelled to deem them unsupportable as a matter of law. Accordingly, the motion to dismiss Counterclaim I is denied.

Counterclaim IV also alleges breach of contract, this time in the form of Plaintiffs' alleged failure to pay post-closing adjustments and prorations. Plaintiffs argue that this claim does not give sufficient facts to notify them of the nature of the counterclaim. Having reviewed the contents of the challenged count, we must disagree that they do not satisfy the requirements of federal notice pleading. Defendants' allegation that money was "due and owing" to them implies that they performed their obligations under the contract, and the statement that Plaintiffs refused to make these payments is sufficient to state that Plaintiffs breached their respective obligations. Furthermore, the enumeration of the invoices Defendants claim were not paid gives

plenty of detail to put Plaintiffs on notice of the nature of the claimed damages. Plaintiffs' arguments regarding the sufficiency of this counterclaim go to the merits of the claim or the proof needed to back it up; those are not inquiries to be made on a 12(b)(6) motion. Thus, the motion to dismiss Counterclaim IV is denied.

*B. Fraud Claim*

In support of their motion to dismiss Counterclaim II, Plaintiffs' main contention is that Defendants did not rely on Plaintiffs' best guess of the value of the inventory, and even if they did rely, that reliance was not justified. There can be no dispute that Defendants have alleged reliance on the December 1999 financial statements in ¶ 20 of the second counterclaim. Whether that reliance was complete or justifiable is not a question suited for resolution on a motion to dismiss. In addition, as discussed above, Defendants have alleged that they were damaged by entering into the agreement at all, not simply for the difference between the estimated and actual values of the inventory. Whether these damages can ultimately be proven is a question for another day. For purposes of the instant motion, we are satisfied that Defendants have pled a legally cognizable claim.

*C. Conversion Claim*

Plaintiffs' final challenge to the legal sufficiencies of the counterclaims focuses on Counterclaim III, a conversion count. In this counterclaim, Defendants aver that

Murphy misappropriated two payments intended for them. In support of their motion, Plaintiffs correctly state that the general rule in Illinois is that money, particularly money alleged to represent a debt owed, is not a proper predicate for a conversion action. In re Thebus, 483 N.E.2d 1258, 1260-62 (Ill. 1985). Plaintiffs attempt to cast this claim as nothing more than an unpaid debt between Murphy and Defendants. We do not find this an apt characterization. Rather, Defendants' allegations clearly indicate that Murphy misappropriated two identifiable sums, one from a company called CPI for $18,000, and another from a Logan Utara for $33,000. Defendants have alleged that Murphy wrongfully assumed ownership of these sums, despite the fact that they had a right to those payments as well as a right to immediate possession of them. Defendants have also alleged that Murphy has retained these amounts despite their demands for them. This is all that is required to plead an adequate claim for conversion under Illinois law. See Cirrincione v. Johnson, 703 N.E.2d 67, 70 (Ill. 1998).

### III. Motion to Strike Affirmative Defenses

Pursuant to Fed. R. Civ. Proc. 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike affirmative defenses are disfavored, however, and will not be granted "unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are

inferable from the pleadings." Williams v. Jader Fuel Co., 944 F.2d 1388, 1400 (7th Cir. 1991) (citations and quotation marks omitted). A motion to strike an affirmative defense will not be granted if the defense is sufficient as a matter of law or presents questions of law or fact. Heller Financial v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989).

Courts will strike an affirmative defense as legally insufficient if the defendant cannot prove a set of facts in support of the defense that would defeat the allegations of the complaint. See, e.g., Franklin Capital Corp. v. Baker & Taylor Entertainment, Inc., 2000 WL 1222043, at *2 (N.D. Ill. Aug. 22, 2000). Affirmative defenses challenged on this basis are tested under a standard identical to that applied in motions to dismiss under Rule 12(b)(6). Bobbitt v. Victorian House, Inc., 532 F. Supp. 734, 737 (N.D. Ill. 1982). "Striking an affirmative defense does not necessarily bar its substantive argument from the case because affirmative defenses—like complaints—are protected by the direction of Rule 15(a) that courts are to grant leave to amend pleadings 'freely . . . when justice so requires.'" Renalds v. S.R.G. Restaurant Group, Chicago, L.L.C., 119 F. Supp. 2d 800, 803 (N.D. Ill. 2000) (quoting Fed. R. Civ. Proc. 15(a)).

The first and eighth defenses advanced in the answer do not contain matters properly pleaded as an affirmative defense. The first, failure to state a claim upon

which relief may be granted, is the stuff of a 12(b)(6) motion. By filing their answer, Defendants have conceded that the complaint states a claim. Flasza v. TNT Holland Motor Express, Inc., 155 F.R.D. 612, 614 (N.D. Ill. 1994). The eighth, which purports to reserve the right to assert additional defenses as they become known, is similarly inappropriate. See Dresser Industries, Inc. v. Pyrrhus AG, 936 F.2d 921, 928 n.6 (7th Cir. 1991). Thus, these two defenses are stricken.

With respect to the third affirmative defense, Plaintiffs claim that it is insufficiently pled because it does not allege enough facts to sufficiently apprise them of the nature of the defense. If the defense is meant to speak to the fraud claim, it is clearly subject to the heightened pleading standard of Rule 9(b) and just as clearly does not satisfy that standard. See, e.g., Carpenter v. Ford Motor Co., 761 F. Supp. 62, 76 (N.D. Ill. 1991). However, with respect to the remaining claims, although the defense is certainly skeletal, we cannot agree that further development is necessary at this early stage. Similarly, the second, fourth, fifth, sixth, and seventh affirmative defenses put Plaintiffs on at least minimal notice of the nature of the claimed defense. Accordingly, these defenses withstand the motion to strike.

**IV. Motion to Dismiss for Lack of Personal Jurisdiction**

Fed. R. Civ. Proc. 12(b)(2) governs motions to dismiss based upon lack of personal jurisdiction. Under this rule, the party asserting jurisdiction shoulders the

burden of proof, but that party need only make a prima facie showing that jurisdiction exists. See Saylor v. Dyniewski, 836 F.2d 341, 342 (7th Cir. 1988). The court must accept all well-pleaded facts within the complaint as true and resolve all factual disputes in favor of the party asserting jurisdiction. See id.

When a case is before a court on the basis of diversity jurisdiction, a federal district court in Illinois may exercise personal jurisdiction over a nonresident defendant only if an Illinois state court would have jurisdiction. See RAR Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1275 (7th Cir. 1997); Dehmlow v. Austin Fireworks, 963 F.2d 941, 945 (7th Cir. 1992). Under the Illinois long-arm provision, a court may exercise jurisdiction over nonresident defendants for any cause of action arising from acts such as transacting any business within the state, committing a tortious act within the state, or making or performing any contract or promise substantially connected with the state. 735 ILCS 5/2-209(a). Furthermore, the statute provides that a court may exercise jurisdiction on any basis permitted by either the Illinois or federal constitutions. 735 ILCS 5/2-209(c). However, the Illinois Supreme Court has made clear that the Illinois due process guarantee is not necessarily co-extensive with federal due process protections, meaning a separate inquiry under the Illinois long-arm statute is still necessary. Although the Illinois Supreme Court "may, in construing the Illinois Constitution's guarantee of due process, look for guidance and inspiration to

-13-

constructions of the Federal due process clause by the Federal courts, the final conclusions on how the due process guarantee of the Illinois Constitution should be construed are for [the Illinois] court to draw." Rollins v. Ellwood, 141 Ill.2d 244, 565 N.E.2d 1302, 1316 (Ill. 1990). Because few cases decided after Rollins clarify the precise interaction between the respective due process clauses of the two constitutions, we look to the discussion of the Federal Due Process for insight as to whether jurisdiction is just. See, e.g., RAR, Inc. v. Turner-Diesel, Ltd., 107 F.3d 1272, 1276-1277 (7th Cir. 1997). Finally, where jurisdiction is predicated on subsection (a), only causes of action arising from the enumerated acts may be asserted against a nonresident defendant. 735 ILCS 5/2-209(f).

Personal jurisdiction can be either general or specific. General jurisdiction arises when a defendant's activities are continuous and systematic, to the extent that it is proper for a court to exercise jurisdiction over the party for any action it takes. See Helicopteros Nacionales de Colombia, SA v. Hall, 466 U.S. 408, 104 S. Ct 1868 (1984). Specific jurisdiction, by contrast, can be exercised when a suit arises out of or is related to the defendant's contacts with the forum. See id., at 414 n.8.

We agree with Severn Trent PLC that its contacts with Illinois cannot be said to be so continuous and systematic that general jurisdiction is present in this case. However, with respect to the exercise of specific jurisdiction, we need look no further

than the allegations of Count IV, which alleges tortious interference with contractual relations. Plaintiffs state that Severn Trent PLC intentionally induced Severn Trent Environmental and Capital Controls to breach their obligations under the Asset Purchase Agreement. Severn Trent PLC argues that this is insufficient to confer jurisdiction over them, but their argument runs counter to binding appellate authority in this circuit. In Janmark, Inc. v. Reidy, the Seventh Circuit stated that, when tortious behavior is alleged, specific jurisdiction can lie in the place of the injury, even if the wrongdoer's behavior occurs wholly without the borders of the forum state. 132 F.3d 1200, 1202 (7th Cir. 1997). Although at least one court in this district has queried whether Janmark will ultimately remain the law of this circuit, there is no question that, at this time, it is still binding on this court. See Clearclad Coatings v. Xontal, Ltd., 1999 WL 652030, at *19-21 (N.D. Ill. Aug. 20, 1999). Defendants also claim that, because the tortious injury in this case is purely economic, Plaintiffs must show that they intended that the harm of their actions be felt in Illinois. See Interlease Aviation Investors II (Aloha) LLC v. Vanguard Airlines, Inc., 262 F. Supp. 2d 898, 910-11 (N.D. Ill. 2003). While this is true, we do not agree with Defendants that such an allegation was not made. The statement that Severn Trent PLC intentionally induced the breaches cited in the complaint carries with it a reasonable inference that Severn Trent PLC knew and appreciated that the effects of its actions would be felt in Illinois

by the Plaintiffs, whom Severn Trent PLC would have known were located in this state.

Contrary to Defendants' arguments, the allegations of Count IV are sufficient for a prima facie showing of specific personal jurisdiction in this case. See Saylor, 836 F.2d at 342. Accordingly, the Rule 12(b)(2) must be denied.

## CONCLUSION

Based on the foregoing analysis, Plaintiffs' motion to disqualify counsel is denied without prejudice. Their motion to dismiss the counterclaims is denied, and the motion to strike the affirmative defenses is granted in part and denied in part. Defendant Severn Trent's motion to dismiss for lack of personal jurisdiction is denied.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: DEC - 3 2003